**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**
**CASE NO. 5:24-cv-00644**

|  |  |
|---|---|
| **MARK KEITH ROBINSON,**<br><br>            **Plaintiff,**<br><br>    **v.**<br><br>**CABLE NEWS NETWORK, INC.,**<br>**LOUIS LOVE MONEY,**<br><br>            **Defendants.** | **<u>DEFENDANTS' NOTICE OF</u>**<br>**<u>REMOVAL</u>**<br>28 U.S.C. §§ 1332, 1441, 1446<br><br>**Removed From:**<br>Wake County Superior Court<br>Civil Action No. 24 CV 032897-910 |

Defendant Cable News Network ("CNN") pursuant to 28 U.S.C. §§ 1441 and 1446, remove this action from the Superior Court of Wake County, North Carolina to the United States District Court for the Eastern District of North Carolina, on the grounds that there is jurisdiction under 28 U.S.C. § 1332(a).

<u>**BACKGROUND**</u>

1.      On October 15, 2024, Plaintiff Mark Robinson filed the defamation action captioned *Mark Robinson v. Cable News Network, Inc. and Louis Love Money*, Case No. 24-CV-032897-910, in the Superior Court of Wake County, North Carolina.

2.      Robinson brings claims against two different defendants – Defendant Louis Love Money ("Money") and Defendant Cable News Network ("CNN") – based on unrelated statements made about him at different times.  These are two different cases joined together for the improper purpose of destroying diversity.

3.      CNN is not affiliated with Money in any way.  There is no allegation that anyone at CNN has even spoken to Money at any time ever.  And the allegedly defamatory statements

Robinson claims Money made are different in content than those he claims CNN made. In short, Robinson's claims against Money have nothing to do with Robinson's claims against CNN.

4. Robinson's claims against CNN are meritless and CNN will make those arguments to the Court in due course.

5. Money is named in this lawsuit for one purpose and one purpose only – to defeat diversity jurisdiction and preclude removal. Robinson's gambit, however, fails because Money is fraudulently joined in this action. Not only is there no connection between Money and CNN, but also there is no possibility that Robinson can succeed on his claims against Money. Jurisdiction is, therefore, proper in this Court.

**A.      The Claim as Alleged Against Defendant Money**

6. Robinson first alleges that Money defamed him in a song published on YouTube on August 11, 2024, and in an interview published in *The Assembly* magazine on September 3, 2024.

7. Money is a North Carolina resident who worked at adult film stores in the 1990s and early 2000s. In an interview with the online publication *The Assembly*, published in the September 3, 2024 article "Ex-Porn Shop Employees Say Mark Robinson was a Regular. He Denies It." (the "*Assembly* Article"), Money states Robinson was a "frequent customer" at some of these stores. Ex. 3 at 2. Money, along with other former employees, recount Robinson's visits to the shops where Robinson purchased "hundreds of bootleg porn videos that Money sold on the side." Money states that Robinson did not pay him $25 for one of those videos. *Id*. The *Assembly* Article also includes a screenshot of a 2022 post from Money's Facebook page with a picture of Robinson and Money under the caption: "I disagree politically with this guy. However[,] we have always been cool. That's our Lt. Governor who still owes me money lol." *Id*. at 8.

2

8.      The $25 decades old debt is also the subject of a music video featuring the song "The Lt. Governor Owes Me Money" (Ex. 4), which is performed by Money's band, Trailer Park Orchestra.  Ex. 23 ¶ 4.  The song includes the lyrics "I made you a bootleg. I did all the time.  Most of the time you paid me, I guess it slipped your mind. I hate to remind you.  Could you please not forget? You know where I live.  Could you mail me a check?"  Ex. 4 at 1:12-1:28.

9.      Robinson's claims against Money are based on these statements.

**B.     The Claim as Alleged Against CNN**

10.     Robinson alleges that Defendant Cable News Network, Inc. ("CNN") defamed him in an article, published on September 19, 2024, entitled "'I'm a black NAZI!': NC GOP nominee for governor made dozens of disturbing comments on porn forum" (the "CNN Article").  Ex. 5.

11.     Critical here, the CNN Article is about something entirely different than the Money statements.  The CNN Article reported that Robinson made comments over a decade ago on the pornographic website, Nude Africa.  As described in the Article, many of these comments were "gratuitously sexual and lewd in nature" and "frequently contained derogatory and racial slurs directed at Black, Jewish and Muslim people".  *Id.* at 11.  These include "I like watching tranny on girl porn! That's f*cking hot! It takes the man out while leaving the man in! And yeah I'm a 'perv' too!"  and "Slavery is not bad. Some people need to be slaves. I wish they would bring it (slavery) back. I would certainly buy a few." *Id.* at 4.  The sentiments expressed in many comments on Nude Africa conflict with Robinson's current political positions.

12.     The CNN Article explains that the posts were made by the username "minisoldr", the same username that Robinson has used on other internet platforms such as X.  *Id.* at 2, 7.  The CNN Article further details how the journalist used Robinson's biographical data, publicly available information, and his posts on other platforms to connect Robinson to the minisoldr account on Nude Africa. *Id.* at 7-9.

3

13.     The CNN Article references the *Assembly* Article, noting that "CNN's reporting on Robinson's comments comes a few weeks after *The Assembly*, a North Carolina digital publication, reported that Robinson frequented local video pornography shops in the 1990s and 2000s." *Id.* at 6. The CNN Article does not mention Money or his statements, and Robinson does not allege (nor could he) that anyone at CNN consulted Money in the course of its investigation.

## C.     ROBINSON'S PUBLIC STATEMENTS ABOUT THE LAWSUIT

14.     Robinson's post-filing conduct and statements further demonstrate that there is no connection between the CNN Article and the Money's statements. On October 15, 2024—the day the Complaint was filed—Robinson and his attorney held a press conference about the lawsuit. The majority of the approximately twenty-minute press conference was devoted to the CNN Article and the investigation Robinson's counsel conducted into CNN's reporting. Counsel also referred to the lawsuit as an "election interference case", in part because a "left wing media outlet is going to stop [Robinson] from being governor". *See* Ex. 6 at 12:00-13:06.

15.     When a journalist posed questions about the claims against Money, Robinson's counsel responded only that Money's activities "were also defamatory." *Id.* 13:10-13:29. The only other mention of Money during the press conference was in counsel's opening remarks when he explained a defamation suit was filed against CNN and Money.

## D.     MONEY'S MOTION PRACTICE

16.     On October 16, 2024, Money filed a motion to dismiss the Complaint because it violated Rule 8(a)(2) of the North Carolina Rules of Civil Procedure. Under that rule, pleadings for punitive damages cannot specify a damage amount greater than $25,000. The Complaint, in clear violation of this rule, alleged $50 million dollars in damages. In the motion, Money theorized that "it has to be considered that the violation of Rule 8(a)(2) may have been for the very purpose of creating media attention for Mr. Robinson's campaign by creating a rambling narrative

4

regarding CNN, Mr. Robinson, and a man who did an obscure video poking fun for Mr. Robinson for frequenting a pornography store . . . and for owing him $25." Ex. 21 at 2.

17.     In response, on October 18, 2024, Robinson filed an Amended Complaint that seeks damages "in excess of twenty-five thousand dollars ($25,000.00)." Ex. 23 at p. 16.

18.     On November 4, 2024, Money filed his brief in support of the Motion to Dismiss. Ex. 22. Describing how no amendment could cure the Rule 8(a)(2) violation, he correctly notes that "[t]he jury pool has been tainted" and "[t]he media spectacle has occurred." *Id*. at 2. The brief also makes clear that Robinson's staff has exacerbated the violation. On October 22, days after the Amended Complaint was filed, a member of the Robinson campaign wrote on X: "When the full set of facts are presented to a jury, they are likely to award Robinson far in excess of $50,000,000." *Id.* at 2, 5.

## GROUNDS FOR REMOVAL

### I.     THE PARTIES

19.     Robinson alleges that he is a North Carolina resident. Ex. 23 ¶ 2.

20.     The Amended Complaint alleges that Money is a North Carolina resident. *Id*. ¶ 4.

21.     Defendant CNN is a Delaware corporation with its principal place of business in Georgia. *Id.* ¶ 3. For purposes of diversity jurisdiction, CNN is not a citizen of North Carolina.

22.     Defendant Money is the only non-diverse defendant. His citizenship, however, should not be considered for jurisdictional purposes because he has been fraudulently joined in this suit.

### II.     FRAUDULENT JOINDER

23.     Fraudulent joinder is an exception to the requirement that diversity jurisdiction requires complete diversity. *Mayes v. Rapoport,* 198 F.3d 457, 461 (4th Cir. 1999). Under this doctrine, a federal court may "disregard, for jurisdictional purposes, the citizenship of certain non-

diverse defendants, assume jurisdiction over a case, dismiss the non-diverse defendants, and thereby retain jurisdiction." *Id*. The doctrine thus allows courts to consider only those defendants who have a "real connection with the controversy" when determining whether diversity of citizenship exists. *See Hugger v. Rutherford Inst*., 63 F. App'x 683, 688 (4th Cir. 2003) (citation omitted).

24. Here, Robinson's own description of this lawsuit demonstrates that the controversy relates to Robinson's (erroneous) claims about CNN's news article, not Money's statements. During the press conference announcing this lawsuit, Robinson started by saying that "we are taking the first steps to do exactly what I said I would do . . . We are holding CNN accountable." Ex. 6 at 0:01-0:14. Robinson's counsel focused his remarks on the "journalistic hit job" by CNN and his team's investigation's attempts to "get to the bottom" of CNN's reporting. *Id*. at 1:00-3:18, 4:00-4:58. Money was never mentioned in the twenty-minute press conference except in response to a direct question from a reporter to Robinson's counsel and when Robinson's counsel named the defendants. *Id.* 1:51-2:35, 13:06-13:29. CNN is the only defendant with a real connection to the controversy.

25. Asserting a near frivolous claim against Money with zero connection to the CNN Article that is the focus of Robinson's ire was intended solely to keep this case in North Carolina State Court and constitutes fraudulent joinder.

26. To establish fraudulent joinder, the removing party must demonstrate "either that the plaintiff committed outright fraud in pleading jurisdictional facts, or that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court." *Blackwood v. Berry, Dunn, McNeil & Parker, LLC,* 828 F. App'x 174, 175 (4th Cir. 2020) (internal quotation marks and citation omitted).

6

27.     The "no possibility" standard is "not to be applied rigidly." *Sheppard v. BAC Home Loans Servicing, LP*, No. 3:11-CV-00062, 2012 WL 204288, at *4 (W.D. Va. Jan. 24, 2012). Instead, the court should ascertain "whether there is a reasonable basis for predicting liability based on the claims alleged." *Id.* (citation and internal quotation marks omitted); *see also Hugger v. Rutherford Inst.*, No. 5:00CV180-H, 2001 WL 114397, at *4 (W.D.N.C. Jan. 18, 2001), *aff'd*, 63 F. App'x 683 (4th Cir. 2003) (finding defendant was fraudulently joined where there was "no reasonable basis in fact to believe that Plaintiffs could maintain any state law claim" against that defendant); *Reeser v. NGK Metals Corp.*, 247 F. Supp. 2d 626, 629 (E.D. Pa. 2003) (noting when evaluating whether a defendant has been fraudulently joined, the court is "not required blindly to accept whatever plaintiffs may say no matter how incredible or how contrary to the overwhelming weight of the evidence").

28.     "[T]o determine whether an attempted joinder is fraudulent, the court is not bound by the allegations of the pleadings, but may instead consider the entire record, and determine the basis of joinder by any means available*." AIDS Counseling & Testing Ctrs. v. Grp. W Television, Inc.*, 903 F.2d 1000, 1004 (4th Cir. 1990) (internal quotation and citation omitted). Therefore, "[t]he court may take judicial notice of documents attached to the notice of removal." *Haynes v. Rocky Mount Cycles, Inc.*, No. 5:23-CV-591-D, 2024 WL 1623101, at *3 (E.D.N.C. Apr. 15, 2024) (considering the discovery papers and affidavits and holding that a defendant had been fraudulently joined). In this case, this inquiry places CNN in the unusual position of arguing that Robinson's claims against Money lack any possibility of success, even though CNN and Money are not affiliated in any way.

29.     Here, there is no possibility that Robinson can prevail in his claim against Money because (1) Robinson cannot plausibly plead actual malice and (2) Robinson cannot establish that

7

Money's statements are defamatory.

30.     Accordingly, because Robinson cannot sustain his action against Money in state court, the Court can disregard Money's citizenship and exercise diversity jurisdiction over this action.[1]

**A.     Robinson Cannot Prevail On His Defamation Claim Against Money.**

31.     To prevail on a defamation claim against Money, Robinson must be able to show that Money "made false, defamatory statements of or concerning the plaintiff, which were published to a third person, causing injury to the plaintiff's reputation." *Griffin v. Holden*, 180 N.C. App. 129, 133, 636 S.E.2d 298, 302 (2006). Where, as here, the plaintiff is a public figure, the complaint must also allege that the statements were made with actual malice. *Boyce & Isley, PLLC v. Cooper*, 211 N.C. App. 469, 479-80, 710 S.E.2d 309, 318 (2011). The actual malice standard is a subjective one. *Reuber v. Food Chem. News, Inc.*, 925 F.2d 703, 714 (4th Cir. 1991).

32.     Courts have found defendants to be fraudulently joined where the plaintiff would not be able to establish elements of a defamation claim. *See, e.g.*, *Minnix v. Sinclair Television Grp., Inc.*, No. 7:23-cv-091, 2023 WL 3570955, at *1 (W.D. Va. May 19, 2023); *Rojas v. Caterpillar*, 1:06CV1024, 2008 WL 11486664 (M.D.N.C. Feb. 13, 2008).

33.     As described below, there is no possibility that Robinson will be able to establish that the statements were defamatory or that they were published with actual malice.

**1.     Money Did not Act with Actual Malice.**

34.     First, Robinson's claim against Money necessarily fails because he cannot show

---

[1] The only issue relevant to removal is the fraudulent joinder of Money. For the avoidance of doubt, however, as will be addressed in subsequent motion practice, the claims are also meritless against CNN.

that Money published the statements with actual malice[2]—*i.e.* that he knowingly made a false statement about Plaintiff or made the statement with reckless disregard for the truth. *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279–80, 285–86 (1964); *see also Bowser v. Durham Herald Co.*, 181 N.C. App. 339, 341-42, 638 S.E.2d 614, 615-16 (2007). That is, Robinson must show that Money "*in fact* entertained serious doubts as to the truth of his publication." *Carr v. Forbes, Inc.*, 259 F.3d 273, 283 (4th Cir. 2001) (citation omitted). He cannot.

35. The only allegations Robinson makes regarding actual malice are 1) Money bore Robinson animus and 2) his statements are "blatant fabrications." Ex. 23 ¶ 51. Both fail to sufficiently plead actual malice.

36. First, Robinson's claims that Money's "extreme antipathy, ill-will, and desire to inflict harm" on Robinson are not sufficient as a matter of law to state a claim of actual malice. Ex. 23 ¶ 51. These "boil down to the claim that [Money] published the [statements] due to animus against Plaintiff," but "[b]esides the fact that these allegations are [] conclusory, caselaw resoundingly rejects the proposition that a motive to disparage someone is evidence of actual malice." *Nunes v. WP Co. LLC*, 513 F. Supp. 3d 1, 8 (D.D.C. 2020), *aff'd*, No. 20-7121, 2022 WL 997826 (D.C. Cir. Apr. 1, 2022) (internal quotation marks and citation omitted). As the United States Supreme Court has explained, "the actual malice standard is not satisfied merely through a showing of ill will or 'malice' in the ordinary sense of the term." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 666 (1989); *see also Fairfax v. CBS Corp.*, 2 F.4th 286, 295 (4th Cir. 2021) (explaining that "even if" defendant "had a self-serving motive in publishing the story,"

---

[2] Robinson, the Lieutenant Governor of North Carolina and former Republican nominee for governor, is unquestionably a public figure and therefore required to plead and prove that the statements were made with actual malice. *See, e.g.*, *Boyce & Isley, PLLC v. Cooper*, 153 N.C. App. 25, 34, 568 S.E.2d 893, 901 (2002) (Plaintiff "certainly qualifies as a public figure due to his candidacy for public office.").

9

"that does not support an inference that [defendant] seriously doubted the truth" of the allegedly defamatory statements). Accordingly, "evidence of personal hostility does not constitute evidence of 'actual malice' under the standard set forth in *New York Times Co. v. Sullivan*." *Varner v. Bryan*, 113 N.C. App. 697, 704, 440 S.E.2d 295, 300 (1994).

37.    This is true even if, as Robinson alleges, the statements were made to "coincide with [Plaintiff's] election" and "derail[] the candidacy of a Republican, pro-life governor." Ex. 23 ¶ 28. Indeed, "the motivations behind defendants' communications—inspired by political differences or otherwise—do not impact whether defendants acted with actual malice as a matter of law." *See Arpaio v. Zucker*, 414 F. Supp. 3d 84, 92 (D.D.C. 2019); *see also Fairfax*, 2 F.4th at 294 (rejecting that an "alleged political motivation" can support a finding of actual malice, as "self-interest and politics motivate[ ] many news sources; if dealing with such persons were to constitute evidence of actual malice on the part of a reporter, much newsgathering would be severely chilled.") (internal quotation marks and citation omitted); *Reuber*, 925 F.2d at 716 ("[M]any publications set out to portray a particular viewpoint or even to advance a partisan cause. Defamation judgments do not exist to police their objectivity."); *Dershowitz v. Cable News Network, Inc.*, 541 F. Supp. 3d 1354, 1370 (S.D. Fla. 2021) ("[A] defamation claim cannot rest on the argument that erroneous communications were motivated by differences in political opinions.")

38.    Moreover, Money's statements in the *Assembly* Article and other public statements demonstrate that Money does not bear any ill will or malice towards Robinson. On the contrary, all of Money's statements reflect genuine affection for Robinson. On the social media website X, above a picture of Money and Robinson, Money wrote on November 8, 2022: "It was cool running into an old friend today. We disagree on politics however you have always been cool with me."

Ex. 7. The same day, Money also posted the picture and caption to Facebook, with the addition "[t]hat's our L.T. Governor who still owes me money lol." The Facebook post is included in the *Assembly* Article, in which Money expresses similar sentiments. Ex. 3 at 8. The Article states: "[Money] said he doesn't really care about the $25 Robinson owes him for that tape. Nor is he trying to derail the Republican's campaign for governor. An unaffiliated voter, he said he likes Robinson as a person, if not necessarily his politics." *Id.* at 2. Money also told *The Assembly* that "his song wasn't meant to criticize Robinson. He called it an inside joke that I'm sharing with the world." *Id.* at 8. On their face, these are not statements made by someone with "extreme antipathy" or a "desire to inflict harm". And, tellingly, Money volunteered to *The Assembly* that "other former associates" and an ex-girlfriend, all of whom *he* contacted, did not remembering seeing Robinson in the adult film stores.[3] Any allegation of "ill-will" is undermined by this frank acknowledgement that other people don't share his memory of Robinson—an admission that belies actual malice. *See Biro v. Conde Nast*, 963 F. Supp. 2d 255, 265 (S.D.N.Y. 2013), *aff'd* 807 F.3d 541 (2d Cir. 2015) ("[I]ncluding denials of a plaintiff rebuts [an] inference of actual malice.").

39. Nor is there, as Robinson alleges, any "tacit[] admi[ssion]" that Money's music video "was timed to coincide with the election and cause Lt. Gov. Robinson maximum damage[.]" Ex. 23 ¶ 28. This statement is an invention. Robinson's allegations are premised on 1) Money's alleged statement that "I'm glad I waited" to make the music video and 2) a meme on X that Robinson claims "suggested that his Music Video 'saved' young women by derailing the candidacy of a Republican, pro-life governor." *Id.* First, it is unclear to what statement Robinson is referring. Robinson does not identify where Money allegedly said "I'm glad I waited" and it is

---

[3] The Amended Complaint concedes that Plaintiff had been to Money's adult film stores. Ex. 23 ¶ 15.

not included in his postings on X, the music video, or *The Assembly* article.[4] Second, Robinson misrepresents the meme, which originally was posted by someone—not necessarily Money—on the Trailer Park Orchestra's X account. The meme shows a still shot from the music video below a picture of a crowd of women, one of whom is holding up the sign "Your Music Saved Me." Money reposted the meme twice, once captioning it "hilarious" and another "Yall hilarious". Exs. 8, 9. This is not an admission of anything, and certainly does not suggest any intention to "derail" Robinson's campaign for governor. There is no factual evidence to support Robinson's conclusory allegations.

40. Second, Robinson's allegations that Money's statements are "blatant fabrications" and that he has "actual knowledge of the falsity of his statements" (Ex. 23 ¶ 51) do not save his defamation claim. It is well-settled that such conclusory allegations are insufficient. As the North Carolina Court of Appeals has explained, these types of "conclusory averments rest, however, not on experienced or otherwise substantiated fact, but on plaintiff's subjective assessment of defendant's motivations." *Dempsey v. Halford*, 183 N.C. App. 637, 641, 645 S.E.2d 201, 105 (2007) (dismissing defamation action) (internal quotation marks and citation omitted). Indeed, on a motion to dismiss, North Carolina courts are "not required . . . to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Wynn v. Tyrrell Cnty. Bd. of Educ.*, 253 N.C. App. 658 (2017) (internal quotation marks and citation omitted) (finding amended complaint failed to state a defamation claim and dismissing action).

---

[4] To the extent this quote is from a video of Money posted by Trailer Park Orchestra on September 25, 2024, available at  https://www.youtube.com/watch?v=reILQr4UzwU, it is clear that Money's comment is not about the music video. He begins the September 25 video by stating "glad I waited to make **this** video" and then proceeds to respond to comments Robinson recently made about Money. This "glad I waited" comment is not, as Robinson suggest, evidence that Money timed his statements "to cause Lt. Gov. Robinson maximum damage." Ex. 23 ¶ 28.

41.     Robinson has failed to plead actual malice and, therefore, there is no possibility his claim has merit against Money.

### 2.     Money's Statement is not Defamatory or Defamatory *Per Se*.

42.      There is also no reasonable basis to conclude that Robinson can prevail on his claim against Money because Money's statements are neither defamatory nor defamatory *per se* as a matter of law.  A statement is defamatory where it "tend[s] to prejudice another in his reputation, office, trade, business or means of livelihood." *Donovan v. Fiumara*, 114 N.C. App. 524, 534, 442 S.E.2d 572, 578 (1994) (citation and quotation marks omitted).

43.     Under North Carolina law, only certain types of statements are actionable as defamation *per se*: those that "(1) charge[ ] that a person has committed an infamous crime; (2) charge[ ] a person with having an infectious disease; (3) tend[ ] to impeach a person in that person's trade or profession; or (4) otherwise tend[ ] to subject one to ridicule, contempt or disgrace." *Skinner v. Reynolds*, 237 N.C. App. 150, 152, 764 S.E.2d 652, 655 (2014) (citation omitted). Only the last category is at issue here.  Ex. 23 ¶ 50.  Whether a statement is defamatory *per se* is a question of law.  *Virginia Citizens Defense League v. Couric*, 910 F.3d 780, 784 (4th Cir. 2018) (citation omitted).

44.     Robinson contends that Money's statements that Robinson owes $25 for a "bootleg porn video[]", frequented a pornography store, purchased and watched "hundreds of bootleg porn videos", including those that were "super hardcore", are defamatory. Ex. 23 ¶¶ 8, 9, 26.  But, as a matter of law, regardless of whether one finds them distasteful, neither the statements about a small debt nor the statements concerning watching pornography are defamatory.

45.     It is not defamatory, let alone defamatory *per se*, to owe someone money.  The Supreme Court of North Carolina expressly rejected such a claim, finding it was not libel *per se* to publish a statement that the plaintiff "is a man who will not pay his honest debts; that he will

13

not work and is a man that respectable people had best not have anything to do with." *Penner v. Elliott*, 225 N.C. 33, 34, 33 S.E.2d 124, 125 (1945); *see also M. Rosenberg & Sons v. Craft*, 29 S.E.2d 375, 378 (Va. 1944) (quoting 33 Am. Jur., sec. 60) (a statement "that a person who is not a trader or merchant, or engaged in any vocation wherein credit is necessary for the proper and effectual conduct of his business, owes a debt and refuses to pay, or owes a debt which is long past due . . . does not in a legal sense necessarily expose the person of whom it is said to public hatred, contempt, or ridicule, nor does it degrade him in society, lessen him in public esteem, or lower him in the confidence of the community").

46.     Nor is it defamatory to say someone watches pornography, which is a lawful activity for adults. While some may disagree about the propriety of such conduct, the simple fact is that statements that someone engaged in a lawful activity are not defamatory. *See Lindell v. Mail Media, Inc.*, 575 F. Supp. 3d 479, 487 (S.D.N.Y. 2021) (statement that the plaintiff purchased alcohol did not have a "defamatory meaning" because doing so is a "legal and ordinary act"); *Means v. ABCABCO, Inc.*, 315 S.W.3d 209, 214 (Tex. App. 2010) ("[I]t is not defamatory to accuse a person of doing that which he has a legal right to do."). While perhaps Robinson would prefer to maintain a more wholesome image, such a desire cannot form the basis of his defamation action. *See Ava v. NYP Holdings, Inc.*, 64 A.D.3d 407, 415-16, 888 N.Y.S.2d 247, 253-54 (1st Dep't 2009) (holding that plaintiff had a "masturbatory fantasy" involving men and woman not susceptible of defamatory meaning).

47.     Moreover, the statements are also not defamatory because "[t]he overall import of the document[s] [are] not derogatory of plaintiff." *Nucor Corp. v. Prudential Equity Group, LLC*, 189 N.C. App. 731, 738, 659 S.E.2d 483, 487 (2008) (dismissing defamation claim where the allegedly defamatory publication "also state[d] that 'We believe [Plaintiff] is a fine company, and

we are not aware of any 'company-specific' flaw or blemish.'"). The lyrics to "The Lt. Governor Owes Me Money" include "Hey, Lieutenant Governor, I'm so proud of you" and "Now you're a wonderful Governor". Ex. 4 at 0:30-0:33, 1:58-2:00. And the tenor of the *Assembly* Article is similarly not "derogatory". Those interviewed, including Money, recall that Robinson was "hilarious" and "a cool dude". Ex 3 at 6. The *Assembly* Article also reports that Money said "he likes Robinson as a person." *Id*. at 2.

48.     Because Robinson will not be able to demonstrate that Money acted with actual malice, and because the allegedly defamatory statements are not defamatory as a matter of law, there is no possibility of Robinson succeeding on his claim for defamation against Money.

**B.     The Amended Complaint Cannot Cure the Original Complaint's Violation of North Carolina Rule 8(a)(2).**

49.     Finally, Robinson cannot prevail on his claim against Money because the original complaint in this action unquestionably violates Rule 8(a)(2) of the North Carolina Rules of Civil Procedure, and it was not cured by amendment.

50.     Rule 8(a)(2) requires that "in all claims for punitive damages in any civil action," as claimed here, "wherein the matter in controversy exceeds the sum or value of twenty-five thousand dollars ($25,000), the pleading shall not state the demand for monetary relief, but shall state that the relief demanded is for damages incurred or to be incurred in excess of twenty-five thousand dollars ($25,000)." N.C. Gen. Stat. § 1A-1, Rule 8(a)(2). In a blatant disregard for this rule, the original complaint stated that Robinson sought "no less than fifty million dollars ($50,000,000.00)." Ex. 11. at 15.

51.     Rule 8(a)(2) was enacted to "save reputations from the harm" that can result from the public learning about the amount of money demanded and "drawing their own conclusions." *Schell v. Coleman*, 65 N.C. App. 91, 93, 308 S.E.2d 662, 664 (1983). Dismissal of a complaint

15

for a violation for Rule 8(a)(2) is appropriate where the violation is "flagrant and aggravated" and causes "irreparable harm" to the defendant's reputation and ability to receive a fair trial. *Id*.

52.     This is precisely the circumstance here.  Following the filing of the Complaint, numerous news outlets reported on the lawsuit and the exorbitant $50 million damages claim.  On October 15, 2024, the day the Complaint was filed, Fox 8 Local News published an article "Inside NC Lt. Gov Mark Robinson's $50 million lawsuit against CNN, former porn clerk; 'Dubiously sourced hit piece'".  *See* https://myfox8.com/news/politics/nc-gov-race/inside-nc-lt-gov-mark-robinsons-50-million-lawsuit-against-cnn-former-porn-clerk-dubiously-sourced-hit-piece/.   That same day, the Raleigh News and Observer, Huffpost, and Raleigh-based North State Journal, among others, also published articles about the lawsuit with the $50 million damages prominently featured     in     the     headline.     *See*     https://www.newsobserver.com/news/politics-government/election/article293991224.html;     https://www.huffpost.com/entry/mark-robinson-suing-cnn-alleged-porn-site-comments_n_670e7a2fe4b094567cfe4b76;

https://nsjonline.com/article/2024/10/robinson-files-50m-defamation-lawsuit-against-cnn//.  Each article references Money and the defamation claim against him.

53.     As the court explained in *Schell*, this type of "adverse publicity" and the resulting harm are the type of "evils sought to be avoided" by Rule 8(a)(2).  *Schell*, 65 N.C. App. at 93, 208 S.E.2d at 664. There, soon after the plaintiff initiated the action, articles covering the lawsuit "in which specific reference was made to the amount of the claim for damage" were published.  *Id*. at 94.   A radio station also broadcast reports about the two-million dollar lawsuit against the defendant.  *Id*.  The impact of the "adverse publicity" is magnified here, where the information's reach is not limited to the circulation of hard copy newspapers or a single radio broadcast.  Any potential juror has unrestricted access to the fact that Robinson initiated a claim against Money for

$50 million dollars.

54.     While the Amended Complaint now adheres to Rule 8(a)(2)'s pleading requirement, as Money's brief in support of his motion to dismiss makes clear, no amendment can cure the damage already cause by the Complaint.  Accordingly, there is no possibility that Robinson will succeed in his claim against Money because dismissal is appropriate pursuant to Rule 8(a)(2).

## III.   FEDERAL JURISDICTION

### A.    Diversity of Citizenship

55.     Robinson is a resident of North Carolina.  CNN is not a resident of North Carolina. For the reasons set forth above, the citizenship and residency of Money should be disregarded for jurisdictional purposes.

56.     Accordingly, complete diversity of citizenship existed at the time of the state court filing, and at the time of this Notice of Removal, for purposes of 28 U.S.C. § 1332.

### B.    Amount in Controversy

57.     Robinson's Amended Complaint claims to seek "compensatory, special, and punitive damages . . . in *excess of twenty-five thousand dollars*" and "disgorgement of any and all income [Defendant CNN] ha[s] made off" the alleged statements. *See* Ex. 23 (emphasis added). Robinson, however, only limited his statement of damages in his complaint because North Carolina Rule 8(a)(2) bars him from specifically stating in his pleadings the punitive damages value he seeks to recover.  *See* N.C. Gen. Stat. § 1-A1, Rule (8)(2). In fact, prior to Money filing a Motion to Dismiss Robinson's Complaint for failure to comply with Rule 8(a)(2), Robinson initially pled that the amount in controversy is "no less than fifty million dollars ($50,000,000.00)." Ex. 11 at p. 15.

17

58. For purposes of determining the amount in controversy, however, federal courts generally consider allegations of "punitive damages". *See Bell v. Preferred Life Assurance Soc'y*, 320 U.S 238, 240 (1943); *see also R.L. Jordan Oil Co. of N.C., Inc. v. Boardman Petroleum, Inc.*, 23 F. App'x 141, 145 n.3 (4th Cir. 2001).

59. Where a plaintiff alleges punitive damages "the court has subject matter jurisdiction unless it is clear beyond a legal certainty that the plaintiff would under no circumstances be entitled to recover the jurisdictional amount." *Quality Labels & Packaging, Inc. v. Wells Fargo Bank, N.A.*, No. 1:19CV210, 2019 WL 2992219, *7 (M.D.N.C. July 9, 2019) (citing *Cadek v. Great Lakes Dragaway, Inc.*, 58 F.3d 1209, 1211–12 (7th Cir. 1995)). Robinson asserts he "can never be fully compensated" for the damage to his personal and public life. Ex. 11 ¶ 42. While CNN disputes this claim, between the alleged $25,000 in damages and the alleged damage to Robinson's personal and professional reputation, which he has claimed amounts to $50 million dollars, the amount in controversy required by 28 U.S.C. § 1332(a) has been met.

60. Because there is complete diversity of citizenship between the proper parties, and because the amount in controversy exceeds $75,000, the Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332. Thus, CNN hereby removes Robinson's suit to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

## IV. VENUE

61. Venue is proper in this Court because this district and division encompass the Superior Court of Wake County, North Carolina the forum from which this case has been removed. *See* 28 U.S.C. § 1391.

## V. CONSENT

62. This notice is filed with the consent of all Defendants.

## VI.    PROCEDURAL REQUIREMENTS

63.    In accordance with 28 U.S.C. § 1446(a) and E.D.N.C. Local Rule 5.3(a), Defendant CNN has attached a Civil Cover Sheet as Exhibit 1, Supplemental Removal Cover Sheet as Exhibit 2 and a copy of the Amended Complaint and all other process and pleadings filed to date are attached as Exhibits 10-27.

64.    A copy of this Notice of Removal will be filed promptly with the Clerk of the Superior Court of Wake County, North Carolina in accordance with 28 U.S.C. § 1446(d), along with a notice of that filing.  A copy of these documents will be served promptly on all parties with written notice of the same.

65.    No waiver and no admission of fact, law, or liability, including without limitation the amounts of damages, if any, is intended by this Notice of Removal, and all defenses, affirmative defenses, rights and counterclaims are reserved.

FOR THE FOREGOING REASONS, the CNN removes this action to the United States District Court for the Eastern District of North Carolina.

19

Dated: November 14, 2024

MOORE & VAN ALLEN LLP

/s/ Mark A. Nebrig
Mark Nebrig
N.C. Bar No. 28710
Kaitlin Price
N.C. Bar No. 50941
100 North Tryon Street, Suite 4700
Charlotte, NC 28202
(704) 331-1000
marknebrig@mvalaw.com
kaitlinprice@mvalaw.com

Kate Bolger (special appearance forthcoming)
Hilary Oran (special appearance forthcoming)
Davis Wright Tremaine LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
(212) 489-8230
katebolger@dwt.com
hilaryoran@dwt.com

*Attorneys for Defendant Cable News Network*

20

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 14th day of November, 2024, I electronically filed the

foregoing Notice of Removal through the CM/ECF system and served copies of the foregoing

Notice of Removal, via e-mail and first-class mail, to the following counsel:

Anthony J. Biller
Envisage Law
2601 Oberlin Road, Suite 100
Raleigh, NC 27608
ajbiller@envisage.law

Jesse R. Binnall
Jason C. Greaves
Binnall Law Group, PLLC
717 King Street, Suite 200
Alexandria, VA 22314
jesse@binall.com
jason@binall.com

*Counsel for Plaintiff*

Andrew L. Fitzgerald
D. Stuart Punger, Jr.
Fitzgerald Hanna & Sullivan, PLLC
119 Brookstown Avenue, Suite 402
Winston-Salem, NC 26101
andy@fhslitigation.com
stuart@fhslitigation.com

Peter D. Zellmer
Peter D. Zellmer, PLLC
421 N. Edgeworth Street
Greensboro, NC 27401
Peter.Zellmer@zellmerlegal.com

*Counsel for Louis Love Money*

*/s/ Mark A. Nebrig*

Mark A. Nebrig

21