IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

| MARK KEITH ROBINSON, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | Civil Action No. 5:24-cv-644-FL |
| | ) | |
| v. | ) | |
| | ) | |
| CABLE NEWS NETWORK, INC., | ) | BRIEF IN RESPONSE TO |
| LOUIS LOVE MONEY, | ) | DEFENDANT LOUIS LOVE |
| | ) | MONEY'S MOTION TO DISMISS |
| Defendants. | ) | |

# INTRODUCTION

Defendant Money moved to dismiss pursuant to N.C. R. Civ. P. 8 because Mr. Robinson's complaint contained a specific monetary remedy. Within days of Money raising the objection, Mr. Robinson filed an amended complaint removing the request for specific monetary damages. Mr. Money also complains that Mr. Robinson has made his defamation lawsuit—concerning national news headlines and Money's defamatory viral video in the heat of a gubernatorial election in a contentious swing state regarding racially and sexually charged accusations—a "media spectacle."

When courts issue punitive sanctions according to N.C. Rule 8(a)(2), it is when the plaintiff obstinately refuses to comply with court orders. Even still, dismissal is reserved only as a last resort, when no other remedy will suffice. Mr. Robinson promptly amended his complaint to fix the pleading error. He did so a week after his lawsuit was filed, and he amended on his own accord without the court ordering him to do so.

Defendant Money seeks dismissal where the N.C. Rule 8(a)(2) violation has been rectified, and he seeks in his brief (although not in his motion) $500,000 in damages where he has articulated no clear injury. This Court should deny Defendant Money's motion to dismiss.

1

**FACTUAL BACKGROUND**

This case is about three viral hit pieces against Mr. Robinson. On August 11, 2024, Defendant Money released a music video titled "The Lt. Governor Owes Me Money" (the "Music Video"). The Music Video depicts a man in a suit with a rubber mask of a black man, intended to depict Mr. Robinson, entering a pornography store to buy pornographic videos. Defendant Money addresses the song to "Mark" and "Mr. Robinson" throughout the Music Video, identifying the man in the suit as the "first black man" to hold the title of lieutenant governor. The Music Video falsely accuses Mr. Robinson of owing money for a "bootleg" porn video that Defendant Money supposedly produced for him.

Defendant Money went on an interview with The Assembly, an online publication, and doubled down on his claims in the Music Video. The Assembly published the interview (the "Assembly Article") where Defendant Money claims Mr. Robinson frequented the pornography store he worked at and would spend thousands of dollars on illegal pornographic bootlegs. Defendant Money's interview and the subsequent publication of the Assembly Article caused the Music Video to go viral.

A few weeks later, CNN published an article titled "I'm a black NAZI!: NC GOP nominee for governor made dozens of disturbing comments on porn forum" (the "CNN Article"). CNN falsely attributed statements made on a pornographic website under the username "minisoldr" to Mr. Robinson. These falsely attributed statements include several lewd, sex-obsessed, racist, and outrageous statements, including the comment from the article headline, "I'm a black NAZI!"

Between the Music Video, Assembly Article, and CNN Article, thousands if not millions of people have been exposed to the Defendants false claims against Mr. Robinson. The

Defendants meant to make their stories about Mr. Robinson as famous and popular as they could to harm his election prospects.

Mr. Robinson publicly defended himself after these hit pieces were published and promulgated to the public. Mr. Robinson made his intentions of filing a lawsuit to defend his reputation clear. *See*, *e.g.*, Matthew Sockol and Michael Hyland, *NC Lt. Gov. Mark Robinson Hires Former Trump Attorney to Investigate CNN Report About Porn Website Comments*, CBS 17, https://www.cbs17.com/news/capitol-report/nc-lt-gov-mark-robinson-hires-law-firm-to-investigate-cnn-report-about-porn-website-comments/ (last updated Sept. 24, 2024); Avery Lotz, *Mark Robinson Says He's Coming After CNN "Full Throttle"*, Axios (Sept. 23, 2024), https://www.axios.com/2024/09/23/mark-robinson-cnn-lawsuit-north-carolina; Dominick Mastrangelo, *Robinson Threatens CNN with Legal Action Over Report: 'We're Going After Them'*, The Hill (Sept. 23, 2024), https://thehill.com/homenews/media/4894577-mark-robinson-legal-action-threat-cnn-report/.

It is no shock why the media would be interested in Mr. Robinson's lawsuit. Mr. Robinson was the Republican nominee in the swing-state of North Carolina; and CNN, one of the most well-known media outlets, had accused him in a national news article of calling himself a "black Nazi" on a pornographic website. Also, Defendant Money had gone on The Assembly for an interview to boost viewership of his video accusing Mr. Robinson of spending hours at his pornography store and buying bootleg copies of grotesque pornographic videos. Defendants intentionally put these issues in the public eye well before this case even began.

On October 15, 2024, Mr. Robinson filed a defamation suit to vindicate his reputation in the eyes of the public and punish CNN and Defendant Money for their lies that they have spread against him to millions of Americans. When Mr. Robinson filed his lawsuit, he held a press

conference and said he filed for $50,000,000. His initial pleadings stated a $50,000,000 claim for relief, which included punitive damages.

Defendant Money filed his motion to dismiss the next day after the complaint was filed. Some news articles reported Mr. Robinson's lawsuit, using his $50,000,000 allegation in headlines. Within a week, Mr. Robinson amended his complaint to remove the $50,000,000 language to conform to Rule 8(a)(2) of the North Carolina Rules of Civil Procedure. Since Mr. Robinson made the change, news headlines have picked up on the change, noting the "decrease" in damages. *See*, *e.g.*, Cassidy Johncox, *Mark Robinson Lawsuit Against CNN Lowered from $50M to $25K: Here's Why*, WBTV 3, https://www.wbtv.com/2024/10/28/mark-robinson-lawsuit-against-cnn-lowered-50m-25k-what-know/ (last updated Oct. 28, 2024); Theresa Opeka, *Robinson's Amended Defamation Lawsuit is Reduced from $50 Million to in Excess of $25,000*, The Carolina Journal (Oct. 22, 2024), https://www.carolinajournal.com/robinsons-amended-defamation-lawsuit-is-reduced-from-50-million-to-in-excess-of-25000/.

**ARGUMENT**

As a threshold matter, removal to federal court should require that the Federal Rules of Civil Procedure apply. Fed. R. Civ. P. 81(c)(1). Defendant Money moves for dismissal pursuant to N.C. Rule 8, which is not a recognized basis for dismissal under the federal rules. *See* Fed. R. Civ. P. 8(a). Involuntary dismissal under Fed. R. Civ. P. 41(b) would also be inappropriate because Mr. Robinson has not violated any federal rule. Moreover, Rule 41(b) dismissal is a "harsh sanction which should not be invoked lightly" without considering (1) the plaintiff's personal responsibility; (2) prejudice to the defendant; (3) the history of a party's actions; and (4) existence of less drastic sanctions. *Chandler Leasing Corp. v. Lopez*, 669 F.2d 919, 920 (4th Cir. 1982). These factors are similar to how North Carolina courts have considered the issue, as

stated below, and should lead this Court to the conclusion that under either rule Defendant Money's motion to dismiss should be denied.

Even if this court were to utilize state procedure, which it should not, the motion should be denied. Part of the rationale for N.C. Rule 8(a)(2), historically, was to prevent legal malpractice suits from garnering disproportionate media attention. *See*, *e.g.*, *Harris v. Maready*, 319 S.E.2d 912, 920 (N.C. 1984), *rev'g* 306 S.E.2d 799 (N.C. Ct. App. 1984); *Schell v. Coleman*, 308 S.E.2d 662, 663 (N.C. Ct. App. 1983). Today, Rule 8(a)(2) is different because it applies to all negligence actions and damage claims invoking punitive damages. *See* N.C. R. Civ. P. 8(a)(2). The rule was not intended for cases such as this, where the nature of the allegations were already public, charged and highly political. In any event, there has been no cognizable prejudice warranting the extraordinary sanction of dismissal.

N.C. Rule 41(b) allows for involuntary dismissal "for failure of the plaintiff to prosecute or to comply with these rules or any order of court." Rule 41(b) under North Carolina law dismissal is not a mandatory sanction for Rule 8(a)(2) violations. *Stokes v. Wilson and Redding Law Firm*, 323 S.E.2d 470, 477 (N.C. App. 1984). Dismissal is only appropriate where a lesser sanction will not suffice. *Harris*, 319 S.E.2d at 922. Where the plaintiff has not amended the complaint, courts have ordered the complaint to be amended and strike the errant pleading from the record. *E.g.*, *Oberlin Capital, L.P. v. Slavin*, 2000 WL 33954582, *11 (N.C. Bus. Ct. April 28, 2000).

Courts issue severe and punitive sanctions where a plaintiff "consistently and doggedly" ignores court orders to amend in face of a Rule 8(a)(2) violation. *Stokes*, 323 S.E.2d at 477. In *Stokes*, the plaintiff brought a legal malpractice claim against his attorney. *Id.* at 472. The

5

Case 5:24-cv-00644-FL     Document 15     Filed 12/05/24     Page 5 of 8

defendant moved to dismiss his complaint pursuant to Rules 8(a)(2) and 41(b), and the trial court granted that dismissal. *Id.*

The Court of Appeals reversed the dismissal and remanded for review for lesser sanctions. *Id.* at 478. The court noted the plaintiff had no opportunity to amend his complaint after he made the Rule 8(a)(2) violation, and he did not "consistently and doggedly ignore the Court order by refusing to delete the *ad damnum* clauses which violated Rule 8(a)(2)." *Id.* at 477. The court distinguished the case from *Schell v. Coleman*, 308 S.E.2d 662 (1983). *Stokes*, 323 S.E.2d at 476-77.

In *Schell*, the plaintiff committed "flagrant" violations of Rule 8(a)(2). *Schell*, 308 S.E.2d at 664. The plaintiff stated in his complaint $2,000,000 in damages over legal malpractice. *Id.* at 663. The trial court ordered that the plaintiff amend the complaint. *Id.* The plaintiff never moved to amend his complaint. *Id.* Early into the action, but after the complaint was filed, the lawsuit made headlines. *Id.* at 664-65. Friends, family, clients, other attorneys were calling the defendant-attorney over the publicity of the newfound lawsuit. *Id.* The plaintiff never made an effort to amend his complaint despite given opportunity to do so. *Id.* (analogizing to *Harris v. Maready*, 308 S.E.2d 662 (N.C. App. 1983), *rev'd*, 319 S.E.2d 912, 920 (N.C. 1984)). So, the trial court dismissed the defendant's motion to dismiss pursuant to Rules 41(b) and 8(a)(2). *Id.*

The *Schell* court reasoned that the plaintiff's disregard for the trial court's order to amend was so flagrant because "the plaintiff here was allowed the opportunity to cure his violation by amending the complaint yet he failed to do so." *Id.* The plaintiff "aggravated the violation by having [the defendant] served in open court, by informing the North Carolina Department of Insurance that a lawsuit existed . . . in the amount of two million dollars . . . and by causing adverse radio and newspaper publicity." *Id.*

6

Mr. Robinsons is much like the plaintiff in *Stokes*, except better off, because he took the initiative to immediately fix his Rule 8(a)(2) violation without a court order to do so. If the *Stokes* court noted the importance that the plaintiff had no opportunity to amend, then amendment and opportunity to cure (and following through on that opportunity) is a condition to rectifying a Rule 8(a)(2) violation. Indeed, it follows that if allowing opportunity to cure is *necessary* to dismiss according to Rules 41(b) and 8(a)(2), then proper amendment is *sufficient* to avoid dismissal sanctions.

Mr. Robinson's case is distinct from the core of *Schell*. Mr. Robinson is seeking an opportunity to cure his violation by amending his complaint. The *Schell* plaintiff got that opportunity and squandered it. Mr. Robinson has not received the same second chance as the *Schell* plaintiff. Defendant Money would hold Mr. Robinson to a higher standard than *Schell* in that Defendant Money wants to forbid any opportunity for cure. Since Mr. Robinson has cured the Rule 8(a)(2) defect, as demonstrated by the fact of his amended complaint, this Court should not dismiss his claim based on Rule 41(b).

Even so, Defendant Money has not been injured or prejudiced in any meaningful way from Mr. Robinson's Rule 8(a)(2) violation. In *Schell*, the adverse publicity came about due to the filings. Here, publicity existed before the filings—even before the issue of $50,000,000. Defendant's own publicization has guaranteed this case's inevitable public audience. Indeed, Defendant CNN *is* the news, and Defendant Money made a *viral* video. This case is not legal malpractice; it is defamation concerning statements made by and through outlets designed to garner as much public attention as possible.

Defendant Money seeks dismissal on a technicality for error that has caused no harm. He seeks drastic and punitive remedies alleging conspiracy to alter the outcome of the case through

the Rule 8(a)(2) violation. Regardless of Defendant's Money's claims, the Rule 8(a)(2) violation did not cause this case to garner national media attention, and Mr. Robinson has remedied the Rule 8(a)(2) violation by amending his complaint.

## CONCLUSION

For the foregoing reasons, Mr. Robinson requests this Court deny Defendant Money's motion to dismiss.

Respectfully submitted this the 5th day of December 2024.

Respectfully submitted,

/s/ *Anthony J. Biller*
Anthony J. Biller
NC State Bar No. 24,117
2601 Oberlin Rd, STE 100
Raleigh, NC 27608
Telephone: (919) 715.1317
Facsimile: (919) 782.0452
Email: ajbiller@envisage.law

/s/*Jason C. Greaves*
Jason C. Greaves (VA Bar No. 86164)
Jesse Binnall (VA Bar No. 79292)
BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, Virginia 22314
Phone: (703) 888-1943
Email: jason@binnall.com
Email: jesse@binnall.com

*Attorneys for Plaintiff*