IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:24-cv-00644-FL

MARK KEITH ROBINSON,

              Plaintiff,

v.

CABLE NEWS NETWORK, INC.,
LOUIS LOVE MONEY,

              Defendants.

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF CABLE NEWS NETWORK INC.'S MOTION TO DISMISS THE COMPLAINT**

Defendant Cable News Network, Inc. ("CNN") submits this memorandum of law in further support of its Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 8).

## PRELIMINARY STATEMENT

In its brief in support of its motion to dismiss (the "Br.", ECF No. 9), CNN argued that Plaintiff Mark Robinson's ("Robinson") defamation claim must be dismissed because the Amended Complaint does not allege any plausible theory of actual malice. In his Opposition ("Opposition" or "Op.", ECF No. 30), Robinson does not meaningfully respond to *any* of those arguments. Instead, Robinson primarily resorts to repeating the conclusory and insufficient allegations in his Amended Complaint, misstating North Carolina law, and criticizing United States Supreme Court precedent that it recently affirmed.

Because Robinson does not plausibly allege the relevant speakers at CNN doubted the truth of CNN's reporting, Robinson's Amended Complaint should be dismissed with prejudice.[1]

## ARGUMENT

### I. Robinson Fails to Plead that CNN Acted with Actual Malice

Robinson does not dispute that, as a public figure, he was required to plead sufficient facts to plausibly allege that CNN acted with actual malice, i.e., that CNN "*in fact* entertained serious doubts as to the truth of his publication." *Fairfax v. CBS Corp.*, 2 F.4th 286, 293 (4th Cir. 2021) (emphasis added); *see also N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964). In its opening brief, CNN argued that Robinson failed to sufficiently make such allegations. But Robinson's Opposition does not meaningfully engage with these arguments. In fact, while Robinson sprinkles his Opposition with his own political rhetoric and opinion that CNN has political bias, he fails to respond to the mountain of case law, including from the Fourth Circuit, establishing that political

---

[1] CNN uses the same definitions in this memorandum of law as it did in the opening brief.

motive cannot provide a sufficient basis for actual malice. (*See* Br. at 9–10); *Fairfax*, 2 F.4th at 294. Any such allegations of political bias, central to both the Amended Complaint and to the public relations campaign Robinson has been running about this lawsuit, must, therefore, be disregarded in assessing the merits of this Motion.

The arguments Robinson does make to avoid dismissal are unconvincing. *First*, Robinson wrongly relies on *Desmond v. News and Observer Publ'g Co*. to argue that the question of actual malice must go to the jury. (Op. at 3–4.) Initially, *Desmond*, is procedurally inapposite; the decision deals with the appeal of a jury verdict and is not probative at the motion to dismiss stage. 375 N.C. 21, 22, 846 S.E.2d 647, 650 (2020). More importantly, the suggestion that failure to plead actual malice cannot be decided at the pleading stage has been rejected by every Circuit that has addressed it, including the Fourth Circuit. *Mayfield v. NASCAR*, 674 F.3d 369, 377–78 (4th Cir. 2012) (affirming dismissal where plaintiff made conclusory assertions the statements "were known…to be false . . ., were malicious or were made with reckless disregard as to their veracity" and did not "suggest that [defendants] knew their statements were false or . . . reckless with respect to their veracity"); *see Biro v. Condé,* 807 F.3d 541, 545 (2d Cir. 2015); *Turner v. Wells*, 879 F.3d 1254, 1273–74 (11th Cir. 2018) (affirming dismissal for failure to plausibly allege actual malice); *Michel v. NYP Holdings, Inc*., 816 F.3d 686, 702 (11th Cir. 2016) (same); *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614–16 (7th Cir. 2013) (same); *Schatz v. Republican State Leadership Committee.*, 669 F.3d 50, 58 (1st Cir. 2012) (same). This Court can and should dismiss now on the ground that Robinson failed to plead actual malice.

*Second*, Robinson argues that actual malice can be alleged by "circumstantial evidence." (Opp. at 4.) CNN does not dispute this general principle, but no circumstantial evidence is sufficiently alleged here. Instead, Robinson relies solely on conclusory allegations devoid of

2

Case 5:24-cv-00644-FL   Document 31   Filed 01/09/25   Page 3 of 13

factual bases. The Eastern District of Virginia case *Eshelman v. Puma Biotechnology, Inc.*, on which Robinson relies, is distinguishable from the facts here. In that case, the circumstantial evidence the court considered was an email from the CEO of the defendant company stating "Im (sic) just getting warmed up. I'm gonna f*** this [Plaintiff] up." This email was "relevant to the malice inquiry, when *combined with other evidence* in the record[.]" No. No. 7:16-CV-18-D, 2018 WL 11411207, at *10 (E.D.N.C. Oct. 29, 2018), *aff'd*, 2 F.4th 276 (4th Cir. 2021) (emphasis added). There are no similarly detailed allegations or circumstantial evidence here. Instead, Robinson relies solely on impermissible, conclusory allegations about what he imagines CNN allegedly "knew." (*See* Br. at 8–13.) Such allegations are plainly insufficient. *See, e.g.*, *Foy v. Bank of Am. Corp.*, No. 5:04-CV-944-FL(1), 2005 WL 8159359, at *2 (E.D.N.C. June 15, 2005), *aff'd*, 229 F. App'x 242 (4th Cir. 2007) (Flanagan, J.) ("[W]hile [the court] must take the facts in the light most favorable to the plaintiff, [the court] need not accept the legal conclusions drawn from the facts . . . [or] unwarranted inferences, unreasonable conclusions, or arguments.") (citation and internal quotation marks omitted); *Parham v. Pepsico, Inc.*, 927 F. Supp. 177, 178 (E.D.N.C. 1995) ("Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice to prevent a motion to dismiss pursuant to 12(b)(6)."). Robinson simply has not alleged the existence of any facts—circumstantial or otherwise—that would establish actual malice here.

*Third*, while Robinson acknowledges that ill-will is not "sufficient on its own" for demonstrating actual malice, he nonetheless contends that actual malice "may be proved" by showing evidence of a defendant's ill-will towards the plaintiff. (Op. at 4.) Robinson is incorrect, and the case Robinson relies on to make this argument, *Barker v. Kimberly-Clark Corp,* 136 N.C. App. 455, 461, 524 S.E.2d 821, 825 (2000), does not help him. *Barker* concerned whether certain statements were protected by a qualified privilege and whether the plaintiff could overcome that

privilege by showing malice. *Id.* Robinson cites no case where the Court concluded that ill-will was relevant to the actual malice analysis outside of the privilege context. Nor could he—the Supreme Court specifically held that "the actual malice standard is not satisfied merely through a showing of ill will or 'malice' in the ordinary sense of the term." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 666 (1989). Unlike *Barker,* this case is not about qualified privilege and, therefore, pleading ill-will is insufficient to plead actual malice.[2]

*Fourth*, Robinson argues that he has sufficiently plead actual malice by alleging CNN's refusal to retract the Article. (Op. 4–5.) This too is incorrect as a matter of law. It is well settled that a decision not to retract an article *after* publication is not probative of actual malice. *See e.g.*, *Blankenship v. NBC Universal*, LLC, 60 F.4th 744, 763 (4th Cir. 2023) ("[T]he lack of a retraction has little to no relevance in the actual malice inquiry."), *cert. denied,* 144 S. Ct. 5 (2023); *Lohrenz v. Donnelly*, 223 F. Supp. 2d 25, 56 (D.D.C. 2002) ("[T]here is no duty to retract or correct a publication, even where grave doubt is cast upon the veracity of the publication after it has been released."), *aff'd*, 350 F.3d 1272 (D.C. Cir. 2003); *McFarlane v. Sheridan Square Press, Inc*., 91 F.3d 1501, 1515 (D.C. Cir. 1996) ("[Plaintiff] presents no authority, however, nor are we aware of any, for the proposition that a publisher may be liable for defamation because it fails to retract a statement upon which grave doubt is cast after publication."); *ShotSpotter Inc. v. VICE Media, LLC*, No. N21C-10-082, 2022 WL 2373418, at *14 (Del. Super. June 30, 2022) (allegation that defendant refused to retract was insufficient to plead actual malice); *D.A.R.E. Am. v. Rolling Stone*

---

[2] Moreover, even accepting that a defendant's ill-will *could* demonstrate actual malice, none is properly alleged here. *See* Am. Compl. ¶ 41 (including the nonactionable allegation that CNN had a "politically left-wing media outlet" that "intended to damage Lt. Gov's Robinson's gubernatorial run"); *id.* ¶ 60 (pleading the impermissible conclusory allegation that "CNN acted with actual malice and reckless disregard for the truth, as demonstrated by Defendant's antipathy, ill-will, and desire to inflict harm on Lt. Gov. Robinson").

*Magazine*, 101 F. Supp. 2d 1270, 1287 (C.D. Cal. 2000), *aff'd*, 270 F.3d 793 (9th Cir. 2001) ("If a publisher's wholesale refusal to retract . . . did not constitute actual malice, it follows that a publisher's retraction which does not satisfy the aggrieved party surely is not actionable as defamatory."). Similarly, publication despite a denial by the plaintiff does not evince actual malice. *See Edwards v. Nat'l Audubon Soc'y, Inc.,* 556 F.2d 113, 121 (2d Cir. 1977) ("[L]iability under the [actual malice standard] cannot be predicated on mere denials, however vehement; such denials are so commonplace in the world of polemical charge and countercharge that, in themselves, they hardly alert the conscientious reporter to the likelihood of error."); *Prince v. Intercept,* 634 F. Supp. 3d 114, 141 (S.D.N.Y. 2022) ("It is well established that denials without more are insufficient to support a plausible claim of actual malice.") (citing cases).

On this point, Robinson again distorts the case law by ignoring the numerous distinguishable facts. (Op. at 5.) In *Rassam v. Yousef*, the newspaper's failure to retract was not, as Robinson implies, alone "considered as evidence of actual malice". *Id.* Rather, it was simply one fact among others, including that the defendants never contacted the plaintiff before publishing the allegedly defamatory statements, one defendant gave conflicting stories as to whether and how the allegedly defamatory statements were verified, and, after the plaintiff filed her lawsuit and demanded a retraction, the defendants "responded by publishing further inflammatory statements about [the plaintiff]." *Rassam v. Yousef* , No. 93-1960, 1996 WL 442897, at *3 (4th Cir. Aug. 7, 1996). The Fourth Circuit found that, *taken together*, "the jury reasonably could conclude" that the plaintiff's evidence of actual malice "was more credible" than defendants' evidence of a lack thereof. *Id*. In contrast, here, there is not—nor could there be—any such allegations about the conduct of the CNN journalists. And in any event, "including denials of a plaintiff" in the

5

publication—as done here (Br. at 4)—"rebuts [an] inference of actual malice." *Biro*, 963 F. Supp. 2d at 283.

*Fifth,* Robinson rehashes his inadequate allegations that CNN's alleged failure to investigate demonstrates actual malice. (Op. at 8.) In doing so, he all but ignores *Harte-Hanks Communications, Inc. v. Connaughton*, in which the Supreme Court established a failure to investigate is insufficient to allege actual malice. (Br. at 9–10.) Instead, Robinson argues that CNN should have conducted a "serious investigation or digital forensics" on the Nude Africa posts and contact the owner of Nude Africa before publishing. (Opp. at 6–7.) For the avoidance of doubt, CNN not only conducted a serious investigation into the Nude Africa posts, but also included in the Article a detailed account of that investigation, explaining to the reader in great detail the onerous steps undertaken by CNN. (Br. at 3–4, 10; ECF 1-6 at 7–8.) Robinson's suggestion to the contrary is simply false. In any event, Robinson cites no case law for the proposition that CNN was obligated to conduct the investigation in the manner he would have preferred. Nor could he. The law is clear that CNN does not need to undertake the steps Robinson believes were necessary before it can publish its report. *E.g. Blankenship*, 60 F.4th at 764. For example, in *Russe v. Harman*, the Western District of North Carolina rejected plaintiff's argument that defendant acted with a reckless disregard for the truth, holding that "[s]imply failing to further investigate the bankruptcy action, without more, is insufficient to establish reckless disregard for the truth." No. 1:21-CV-00270-MR-WCM, 2023 WL 4497011, at *16 (W.D.N.C. July 12, 2023). In *Russe*, the plaintiff argued that the defendant acted with actual malice because the defendant posted online that the plaintiff's record included a bankruptcy action even though the defendant failed to research the bankruptcy action on PACER or heed the disclaimer about potential inaccuracies on a website that connected plaintiff to a bankruptcy action. *Id.* The Western District of North Carolina explained

that the defendant's failure to undertake those specific actions was not evidence that the defendant "'entertained serious doubts' as to whether the plaintiff's record in fact included a bankruptcy action." *Id*. Moreover, the court found that the "[d]efendant thought that her statements were true because she found information connecting the Plaintiff to a bankruptcy action on two separate websites." *Id.* Similarly, here, CNN found multiple connections between the minisoldr posts and Robinson. There is no combination of allegations that plausibly allege CNN entertained *any* doubts about its thorough reporting. There is simply no basis to contend that CNN's reasonable decision not to conduct a forensic review or contact Nude Africa demonstrates actual malice.

More remarkably, Robinson does not back down from his fanciful theory that some unknown bad actor triangulated various bits of information about him—information that was scattered across the internet over the last ten years—to create fake posts on Nude Africa and backdate them, arguing seemingly with a straight face that "anyone could have created an account using Lt. Gov. Robinson's information." (Op. at 6.) But Robinson's personal belief that anything can happen on the internet hardly meets the *Iqbal/Twombly* plausibility standard because it does not nudge the allegations over the line from possibility to plausibility. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (allegations "stop[ped] short of the line between possibility and plausibility of entitlement to relief"). That is especially the case here because the allegedly defamatory Article details the efforts the CNN investigative journalists undertook to confirm that Robinson made the Nude Africa posts, including 1) reviewing countless posts on Nude Africa by minisoldr and other posts known to have been authored by Robinson, on other platforms, like Facebook, 2) discovering that the minisoldr account used the same email address associated with Robinson on other platforms, and 3) detecting that biographical details, personal interests, and unique phrases across the minisoldr accounts matched Robinson's biographical details, personal

7

interests and unique phrases. (Br. at 4, 10.) In the face of these specific actions, Robinson's claim that he sufficiently alleged CNN acted with actual malice because CNN "was aware" that Nude Africa allegedly used an outdated software prone to hacking and that Robinson's personal information had been hacked are insufficient. (Op. at 6.) Not only are these allegations impermissibly conclusory (*see* Br. at 12)[3], they certainly do not plausibly allege that the CNN journalists believed the contents of the Article were false.

*Sixth*, Robinson posits that the notion he could be the author of the Nude Africa posts is "so inherently improbable" that CNN acted with actual malice in publishing the Article. (Op. at 7.) But this entire argument relies on the conclusory claim that because Robinson was the Lieutenant Governor of North Carolina it was "inherently improbable" that Robinson wrote the minisoldr posts over ten years ago, long before he became a politician. His role as an elected official alone is not enough to render any statement inherently improbable. In fact, this very argument was rejected by the Eastern District of Virginia in *McCullough v. Gannett*:

> Plaintiff does nothing more than point to his "stature" to establish actual malice via improbability. In effect, that argument would mean that defamation plaintiffs of sufficient stature—who, like [Plaintiff], are often public figures—need not plead any real facts about actual malice, but instead can rely on the fact that criticisms are "highly improbable." The First Amendment and *New York Times v. Sullivan* do not tolerate that theory.

No. 1:22-CV-1099-RDA-LRV, 2023 WL 3075940, at *14 (E.D. Va. Apr. 25, 2023). This Court should reject it, too.

---

[3] Robinson claims, without any support, that because it was "publicly available" that Nude Africa used "vulnerable an[d] outdated software" and that Robinson was hacked, the allegations as to CNN's knowledge about this information are not conclusory. (Op. at 6–7.) The public availability of information does not excuse Robinson from his pleading standard, pursuant to which this Court is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Finally*, Robinson argues he can ignore the Supreme Court's directive that allegations of actual malice must be "brought home" to the individuals "in the [defendant's] organization having responsibility for the publication of the [statement]." *Sullivan*, 376 U.S. at 287. He contends that this requirement is inapplicable here because "the identity of the [Article's] authors" are "prominently displayed" on the Article. (Op. at 8.) But whether the journalists' names are readily apparent from the Article is not the benchmark for whether the allegations have been "brought home." Instead, the complaint must allege adequately that the *journalists* had knowledge of falsity. *See Sullivan*, 376 U.S. at 287 (explaining the actual malice standard is subjective and is measured by "the state of mind required . . . would have to be brought home to the persons . . . having responsibility for the publication."); *Mimms v. CVS Pharmacy, Inc.*, 889 F.3d 865, 868 (7th Cir. 2018) ("It is the state of mind of the speaker that is relevant."); *Mejia v. Telemundo Mid-Atl. LLC*, 440 F. Supp. 3d 495, 502 (D. Md. 2020) (dismissing defamation claim for failure to plead actual malice where complaint contained no factual allegations about state of mind of the individual in charge of making the allegedly defamatory statements). Recognizing this, the Superior Court of Delaware recently dismissed a defamation claim based on an article on CNN.com in part because, even though, as here, the authors' names were displayed on the article, the complaint did not "name any person or persons at CNN who were responsible for any false statements". *Mac Isaac v. Cable News Network, Inc.*, No. S22C-10-012 RHR, 2024 WL 4371035, at *3 n. 24 (linking article), *5 (Del. Super. Ct. Sept. 30, 2024). Robinson's general assertion that CNN acted with actual malice is entirely irrelevant to the question of whether the Article's *authors* had serious doubts about the allegedly defamatory statements.

For the reasons set forth above, Robinson has failed to allege that CNN acted with actual malice and this Court should dismiss the Amended Complaint with prejudice.

## II. The Supreme Court Reaffirmed *New York Times v. Sullivan* in 2023

Perhaps recognizing that the Amended Complaint's actual malice allegations are woefully deficient, Robinson asks this Court to ignore 60 years of Supreme Court precedent and disregard *New York Times v. Sullivan*, the seminal actual malice decision. (Op. at 10.) In so arguing, Robinson neglects to mention that the Supreme Court recently reaffirmed *Sullivan* in 2023. In *Counterman v. Colorado*, the Supreme Court unequivocally stated: "a public figure cannot recover for the injury [a defamatory] statement causes unless the speaker acted with 'knowledge that it was false or with reckless disregard of whether it was false or not.'" 600 U.S. 66, 76 (2023) (quoting *Sullivan*, 376 U.S. at 280). And, the Court reiterated that the rule "is based on fear of 'self-censorship'—the worry that without such a subjective mental-state requirement, the uncertainties and expense of litigation will deter speakers from making even truthful statements." *Id.* (quoting *Sullivan*, 376 U.S. at 279); *see also id.* at 103–04 (Sotomayor, J., concurring).

This Court must continue to protect the ability of news organizations to report on issues of public import without the threat of litigation or censorship. As the Fourth Circuit has explained, the actual malice standard is "rooted in the First Amendment's vital guarantee of free and uninhibited discussion of public issues" and ensures "defamation cases involving issues of public concern are considered against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *CACI Premier Tech., Inc. v. Rhodes*, 536 F.3d 280, 293 (4th Cir. 2008) (citation and internal quotation marks omitted). This Court should decline Robinson's invitation to curtail this critically important standard.

## CONCLUSION

For the foregoing reasons, Defendant CNN respectfully requests that the Court grant its Motion to Dismiss Plaintiff's Amended Complaint with prejudice.

Dated: January 9, 2025

MOORE & VAN ALLEN LLP

*/s/ Mark A. Nebrig*

Mark A. Nebrig
N.C. Bar No. 28710
Kaitlin M. Price
N.C. Bar No. 50941
Moore & Van Allen LLP
100 North Tryon Street
Suite 4700
Charlotte, NC 28202
(704) 331-1000
marknebrig@mvalaw.com
kaitlinprice@mvalaw.com

Katherine M. Bolger (special appearance)
Hilary Oran (special appearance)
Davis Wright Tremaine LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
(212) 489-8230
katebolger@dwt.com
hilaryoran@dwt.com

*Attorneys for Defendant Cable News Network*

11

**CERTIFICATE OF SERVICE**

I hereby certify that on the 9th day of January, 2025, I electronically filed the foregoing MEMORANDUM OF LAW IN FURTHER SUPPORT OF CABLE NEWS NETWORK INC.'S MOTION TO DISMISS THE COMPLAINT was filed electronically with the Clerk of Court through ECF, and that ECF will send e-notice of the electronic filing to the attorneys of record.

This 9th day of January 2025.

MOORE & VAN ALLEN LLP

*/s/ Mark A. Nebrig*

Mark A. Nebrig
N.C. Bar No. 28710
Kaitlin M. Price
N.C. Bar No. 50941
Moore & Van Allen LLP
100 North Tryon Street
Suite 4700
Charlotte, NC 28202
(704) 331-1000
marknebrig@mvalaw.com
kaitlinprice@mvalaw.com

Katherine M. Bolger (special appearance)
Hilary Oran (special appearance)
Davis Wright Tremaine LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
(212) 489-8230
katebolger@dwt.com
hilaryoran@dwt.com

*Attorneys for Defendant Cable News Network*